UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

BRENTWOOD GOLF CLUB, LLC,

        Debtor.

Case No. 04-54286
Chapter 11
Hon. Marci B. McIvor

_____/

BASIL T. SIMON, Chapter 11 Trustee
of Brentwood Golf Club, LLC,

        Plaintiff, and

JP MORGAN CHASE BANK, N.A.

        Intervening Plaintiff,

v.

BRENTWOOD TAVERN, LLC,

        Defendant.

Adv. Proc. 05-4098

_____/

## OPINION GRANTING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Trustee's Motion for Summary Judgment on

the issue of the substantive consolidation of Debtor and Tavern. The Court GRANTS

Trustee's Motion for Summary Judgment for the reasons set forth below.

## FACTUAL BACKGROUND

A.    Acquisition and Ownership of Debtor and Tavern

In late 2000, Barrie Moore and Farrell Moore entered into negotiations with Bank One to obtain bank financing to acquire the Brentwood Golf Course and Country Club in White Lake, Michigan ("Golf Course") from the Golf Trust of America.

The Moores set up a limited liability company knows as Brentwood Golf Club, LLC ("Debtor") to acquire the Golf Course. Barrie Moore owns a two-percent interest in the Debtor. The only other member of Debtor is the Moore Family Limited Partnership ("MFLP"), which owns a 98 percent interest. Barrie Moore holds a 25% interest in the MFLP. Plaintiff's Exhibit A, Transcript of the Deposition of Barrie Moore dated June 22, 2005 ("Barrie Moore Dep."), p. 11, lines 3-7. The general partner of the MFLP is Moore Management, LLC. Farrell Moore controls Moore Management, LLC.

On or about March 26, 2001, Debtor acquired the Golf Course from the Golf Trust of America. The terms of the purchase are set out in the Golf Course Purchase and Sale Agreement and Earnest Money and Escrow Instructions dated March 7, 2001 ("Purchase Agreement"). Plaintiff's Exhibit A, Barrie Moore Deposition, Exhibit 1, Purchase Agreement. The Purchase Agreement specifically allocates a portion of the purchase price to "Liquor License and Bar Equipment." Plaintiff's Exhibit A, Purchase Agreement, ¶ 2.3, pp. 6-7. The Purchase Agreement also provided for the transfer of the liquor license to Debtor as well as the procedure while the transfer was pending. Plaintiff's Exhibit A, Purchase Agreement, ¶ 5.4(g) at p. 16. In accordance with the Purchase Agreement, the Golf Trust of America and Debtor entered into an Assignment

2

of Management Agreement dated March 19, 2001. Plaintiff's Exhibit B. Pursuant to the Assignment of Management Agreement, the Golf Trust of America transferred its interest in a Management Agreement with Brentwood/Beacon Hill, LLC, the owner of the liquor license at the Golf Course, to Brentwood Golf Club, LLC. Plaintiff's Exhibit B.

The Moores set up another limited liability company known as Brentwood Tavern. Farrell Moore is the only member of Tavern. Plaintiff's Exhibit C. Tavern's only business is selling liquor and food at Brentwood Golf Club.

On or about March 26, 2001, Bank One loaned $2,430,000 to Debtor. The loan proceeds were used by Debtor to acquire the Golf Course and personal property set out in the Purchase Agreement, including a liquor license, kitchen equipment and other assets that were to be used by Tavern in its operation. Plaintiff's Exhibit A, Exhibit K to the Purchase Agreement, Bill of Sale. As part of the loan, Tavern executed a guaranty in favor of Bank One. On June 27, 2005, the Oakland County Circuit Court entered judgment in favor of Bank One against Tavern, Farrell Moore and Ann Moore on their guaranties. Plaintiff's Exhibit D, Judgment.

## B.  Operations and Management of Debtor and Tavern

Debtor's primary business is the ownership and operation of an eighteen hole golf course and clubhouse located in White Lake, Michigan. The Golf Course is comprised of several outbuildings and a main clubhouse situated on the course. The clubhouse space in which Tavern operates is largely contiguous with the clubhouse facilities used by Debtor.

Barrie Moore has been the manager of Debtor from March 2001 until the

3

appointment of the Chapter 11 Trustee. His duties included hiring and firing employees, day to day maintenance of the Golf Course, "making decisions regarding purchases of capital assets . . . and paying bills." Plaintiff's Exhibit A, Barrie Moore Deposition, p. 12, lines 10-2.

Barrie Moore is also the manager of Tavern. His duties on behalf of Tavern are virtually identical to his duties with Debtor. Plaintiff's Exhibit A, Barrie Moore Deposition, p. 12, line 24 through p. 13, line 1.

In 2002, Tavern acquired the liquor license by transfer from Brentwood/Beacon Hill, LLC for $1.00. Plaintiff's Exhibit I, Agreement for the Sale, Transfer, and Assignment of Liquor License and Liquor Inventory dated January 24, 2002. Neither Barrie Moore nor Tavern have produced any documents evidencing either the transfer by Debtor of the restaurant equipment or the right to acquire the liquor license purchased from the Golf Trust of America by Debtor pursuant to the Purchase Agreement.

## C.    Tavern's Lease with Debtor

Tavern operates a bar and grill and banquet facilities pursuant to a Lease with Debtor dated February 10, 2003 ("Lease"). Plaintiff's Exhibit E. The Lease was executed by Farrell Moore both as "Managing Member of Brentwood Golf Club, LLC" on behalf of Brentwood Golf Club as the "Landlord" and on behalf of Tavern as "Tenant". Plaintiff's Exhibit E; Plaintiff's Exhibit F, Transcript of the Rule 2004 Examination of Brentwood Golf Club, LLC dated July 9, 2004 ("2004 Exam."), p. 71, line 14 through p. 72, line 4. The Lease was drafted by Harvey Babcock, an attorney representing both

4

Tavern and Debtor. Plaintiff's Exhibit G, Transcript of the Continuation of the Rule 2004 Examination dated October 27, 2004 ("Cont. 2004 Exam.), p. 114, lines 3 through 6, and page 115, line 12 through page 116, line 5.

Under the terms of the Lease, Tavern leased approximately 17,000 square feet from Debtor for $750.00 per month for a period of sixty months beginning February 10, 2003. Plaintiff's Exhibit E, Lease. In other words, Tavern was leasing its space for less than fifty-cents per square foot, a price well below market value. Plaintiff's Exhibit H, Transcript of the Deposition of Barry Lefkowitz dated July 15, 2005 ("Lefkowitz Dep."), p. 39, line 25 through p. 40, line 8. The Lease does not require Tavern to provide any services to Debtor in exchange for the below-market rent. Plaintiff's Exhibit E, Lease. Instead, the Lease requires Tavern to pay Debtor for its share of increased real estate taxes and to maintain insurance coverage. Plaintiff's Exhibit E, Lease, ¶ ¶ 9, 13. Tavern never paid for its share of taxes nor did it carry the required insurance coverage. Plaintiff's Exhibit F, 2004 Exam., p. 73, line 3. Additionally, the Tavern has not paid rent since, at least, December 11, 2004. Case No. 05-5235, Judgment and Order dated July 14, 2005, ¶ 8.

D.    Bank Accounts and Accounting

Prior to May 1, 2003, Tavern and Debtor shared a bank account (account number 884217175) at National City Bank held in the name of Debtor ("National City Account"). Tavern and Debtor both deposited money into the account and paid expenses from the account. Plaintiff's Exhibit A, Barrie Moore Dep., p. 37, line 12 through p. 38, line 14; Motion of Bank One for Appointment of a Trustee filed in the

5

principal case (Case No. 04-54286), Exhibit B, 2004 Exam., p. 21, line 7 through p. 29, line 17. Debtor and Tavern continued to use the National City Account until at least May 30, 2004, a date post-petition. Thereafter, Debtor and Tavern opened two separate accounts at Huntington National Bank.

Debtor and Tavern did not keep organized or separate financial records. Plaintiff's Exhibit J, Transcript of the Deposition of Norman Weiner dated June 9, 2005 ("Weiner Dep."), p. 16, lines 8-23. Debtor's accountant could not discern any rules for determining whether an expense should be applied to Debtor or to Tavern. Plaintiff's Exhibit J, Weiner Dep., p. 18, lines 8-11. Apparently, Barrie Moore made the decisions, on a check by check basis, concerning where expenses were to be applied. Plaintiff's Exhibit A, Barrie Moore Dep., p. 38, line 15 through p. 39, line 11; Plaintiff's Exhibit J, Weiner Dep., p. 18, lines 24-25.

Barrie Moore also used income from Tavern and Debtor deposited in to the National City Account to pay his personal expenses. Plaintiff's Exhibit L, Summary of Checks written to Northville Downs contained on the Registers; Plaintiff's Exhibit A, Barrie Moore Dep., p. 46, lines 5 through 13.


E.    Procedural Posture

Debtor filed for bankruptcy on May 17, 2004 and operated as a Debtor-In-Possession. While Debtor was in charge of its operations, Bank engaged in extensive discovery in an attempt to determine the nature of the relationship between Tavern and Debtor and to determine what Debtor was doing with Bank's collateral. Debtor-In-Possession's consistent refusal to respond to Bank's legitimate discovery requests and

6

allegations that Debtor-In-Possession was altering Debtor's business records and/or removing assets or cash from the estate caused this Court to appoint a Chapter 11 Trustee on December 21, 2004.

On February 3, 2005, the Chapter 11 Trustee for Brentwood Golf Club filed this adversary proceeding seeking to substantively consolidate the assets and liabilities of Brentwood Golf Club, LLC and Brentwood Tavern, LLC ("Defendant"), or to recover assets of Debtor transferred to the Tavern as fraudulent conveyances. On May 16, 2005, JP Morgan Chase Bank ("Intervening Plaintiff" or "Bank"), successor by merger to Bank One, intervened in this adversary proceeding. On July 21, 2005, the Trustee filed this motion for summary judgment alleging that, as a matter of law, Defendant and Debtor should be substantively consolidated.

II.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056 (Rule 56 applies in adversary proceedings). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v.*

7

*Catrett*, 477 U.S. 317, 322 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. 317, 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252. The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Liberty Lobby*, 477 U.S. at 255.

III.

## JURISDICTION

Bankruptcy courts have jurisdiction over all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11. 28 U.S.C. §§ 1334 & 157. Core proceedings include matters concerning the administration of the estate and other proceedings affecting liquidation of the assets of the estate. *Id.* § 157(b)(2)(A) and (O). As this is a proceeding concerning administration of the estate and the liquidation of the assets of the estate, this is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Thus, this Court has jurisdiction over this matter.

8

IV.

## ANALYSIS

The adversary proceeding filed in this case seeks either the substantive

consolidation of Debtor with Tavern or a recovery of Debtor's assets transferred to

Tavern as fraudulent conveyances. In this motion for summary judgment, the Trustee

seeks a determination that, as a matter of law, Debtor and Tavern should be

substantively consolidated. The substantive consolidation of Debtor and Tavern would

result in the treatment of those entities as one. This Court finds that the treatment of

Debtor and Tavern as one entity can also be achieved by finding that Tavern is the

alter-ego of Debtor and piercing the corporate veil of Tavern.


A.      Tavern is the Alter Ego of Debtor.

The Sixth Circuit, in *Bodenhamer Bldg. Corp. v. Architectural Research Corp.*,

873 F.2d 109, 111 (6th Cir. 1989), set forth an analysis regarding when it is appropriate

to pierce the corporate veil under Michigan law:

> '[T]he general principle in Michigan is that separate corporate identities
> will be respected, and thus corporate veils will be pierced only to prevent
> fraud or injustice.' (citations omitted) . . .'The entire spectrum of relevant
> facts form the background for such an inquiry and the facts are to be
> assessed in light of the corporation's economic justification to determine if
> the corporate form has been abused.' (citation omitted).

Specifically, the Michigan Courts have held, "the separate existence of . . . two

corporations will be ignored and both will be regarded as one where they are so

organized and carried on that one is a mere instrumentality or agent or adjunct to the

other." *Charles E. Austin v. Secretary of State*, 32 N.W.2d 694 (Mich. 1948). Further,

9

the corporate veil may be pierced when,

> (a) a corporation and shareholders [in this case, Tavern and Debtor] have a complete identity of interest; (b) the corporation [Tavern] is a mere instrumentality of the shareholders [Debtor]; (c) the corporation [Tavern] is a device to avoid legal obligations; or (d) the corporation [Tavern] is used to defeat public convenience, justify a wrong, protect fraud or defend a crime.

*Bodenhamer Bldg. Corp.*, 873 F.2d at 112. In the labor context, the Sixth Circuit has also identified other factors to consider in making a determination of an alter ego and those include, "whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision and ownership." *NLRB v. Allcoast Transfer, Inc.*, 780 F.2d 576, 579 (6th Cir. 1986).

Tavern argues that Debtor and Tavern are distinct entities because Debtor and Tavern are different businesses with different assets, employees and creditors. While it is true that Debtor and Tavern have different business purposes (Tavern is a restaurant and Debtor is a golf course), the two business are inextricably intertwined and all of the corporate formalities have been disregarded. Contrary to Tavern's claims, Debtor and Tavern share some assets (e.g., the restaurant equipment and the liquor license), employees (e.g., Barrie Moore managed both Debtor and Tavern and Farrell Moore executed the Lease between Debtor and Tavern on behalf of both parties), and creditors (Bank and other creditors). For these reasons, and for the reasons set forth below, this Court finds that Tavern is the alter-ego of Debtor:

1.   Bank One loan proceeds were used by Debtor to acquire the Golf Course and personal property set out in the Purchase Agreement, including a liquor license, kitchen equipment and other assets that were to be used by

10

Tavern in its operation. Plaintiff's Exhibit A, Exhibit K to the Purchase Agreement, Bill of Sale. Tavern has been unable to produce any documents evidencing the transfer for consideration of any of these assets other than the transfer of the liquor license to Tavern from Brentwood/Beacon Hill, LLC for $1.00. Plaintiff's Exhibit I.

2.   The clubhouse space in which the Tavern operates is largely contiguous with the clubhouse facilities used by Debtor.

3.   Barrie Moore was the manager of Debtor from March 2001 until the appointment of the Chapter 11 Trustee on December 22, 2004. Barrie Moore has also been and remains the manager of Tavern. His duties on behalf of Tavern are virtually identical to his duties on behalf of Debtor. Plaintiff's Exhibit A, Barrie Moore Dep., p. 12, line 10 through p. 13, line 1.

4.   Tavern leased its space from Debtor for a price well under market value (approximately fifty-cents per square foot). Plaintiff's Exhibit E, Lease. Accordingly to the testimony of Barry Lefkowitz, CPA, CIRA, retained by the Trustee, that rent is "highly questionable in terms of an arms-length transaction." Plaintiff's Exhibit H, Barry Lefkowitz Dep., p. 39, line 25 through p. 40, line 8. The Lease does not require Tavern to provide any services to Debtor in exchange for the nominal rent. Plaintiff's Exhibit E, Lease.

5.   Tavern has not paid any rent to Debtor as is required by the Lease since, at least, December 11, 2004. Case No. 05-5235, Judgment and Order dated July 14, 2005, ¶ 8.

11

6. The Lease required Tavern to pay Debtor for its share of increased real estate taxes and to maintain insurance coverages. Plaintiff's Exhibit E, ¶¶ 9, 13. Barrie Moore, testifying on behalf of Debtor did not know whether Tavern had ever paid for its share of the taxes and testified that Tavern did not carry the required insurance coverage. Plaintiff's Exhibit F, 2004 Exam., p.72, line 15 through p. 73, line 3. Tavern has not provided any proof that it had paid its share of the taxes.

7. At his June 22, 2005 deposition, Barrie Moore was asked if there had been any loans between Tavern and Debtor. He first responded that there might be a note evidencing a loan between the two entities. He then qualified his previous testimony by stating, "I don't know. It might be just my father. Sometimes I get confused between monies my father put in [to Debtor] as opposed to Brentwood Tavern putting it in. I look at both of them as the same." Plaintiff's Exhibit A, Barrie Moore Dep., p. 76, lines 11 through 22.

8. Sometime prior to May 1, 2003 and until at least May 30, 2004, Tavern and Debtor shared a bank account at National City Bank. Plaintiff's Exhibit A, Barrie Moore Dep., p. 37, line 12 through p. 38, line 14; Case No. 04-54286, Motion of Bank One for Appointment of a Trustee, Exhibit B, 2004 Exam., p. 21, line 7 through p. 29, line 17.

9. The financial records of Debtor and Tavern are inextricably intertwined. According to Debtor's accountant, Norman Weiner, when he began to work for the Debtor, the books and records were a "tremendous mess."

12

There was a "lack of books and records, re-creation of books and records, to recording payroll taxes . . . None of those were done." Plaintiff's Exhibit J, Weiner Dep., page 16, lines 8 through 23. In order to re-create the books and records, Debtor's accountant reviewed hundreds of checks in order to determine whether a check should be considered an expense of Debtor or of Tavern. Plaintiff's Exhibit J, Weiner Dep., p. 17, lines 2-13. Although Debtor's accountant had many discussions with Barrie Moore to determine the criteria for application of a check to Tavern or Debtor, Debtor's accountant could not discern any rule for determining how an expense was to be applied. Plaintiff's Exhibit J, Weiner Dep., p. 18, lines 8-11. Instead, Barrie Moore made the decisions concerning how expenses were to be applied. Plaintiff's Exhibit A, Barrie Moore Dep., p. 38, line 15 through p. 39, line 11. When asked why payments were accounted for as Tavern expenses, Barrie Moore testified, "That's just the way it is." Plaintiff's Exhibit A, Barrie Moore Dep., p. 38, line 23.

10.    Debtor and Tavern were reliant on each other for profitability. Debtor needed the liquor license and food service to bring in outings and leagues. Tavern needed Debtor to bring it customers for its restaurant and to provide a setting to attract weddings and other special events. Plaintiff's Exhibit H, Lefkowitz Dep., p. 42, line 1 to p. 44, line 21. The Trustee's accountant testified, "I think, and finally as you just pointed out, it's difficult for these entities to be profitable without one another . . . These entities are totally inter-reliant upon each other for their profitability,

13

and there is a dependency that they have on each other for profitability."
Plaintiff's Exhibit H, Lefkowitz Dep., p. 43, line 19 to p. 44, line 1.
Lefkowitz further testified, "there is a symbiotic relationship because it's all
one entity." Plaintiff's Exhibit H, Lefkowitz Dep., p. 42, line 24-25.

Because Tavern is the alter-ego of Debtor, this Court is piercing Tavern's
corporate veil. Once Tavern's corporate veil is pierced, there is no need for a
determination that the entities need to be substantively consolidated because the
assets and operations of one are, as a matter of law, the assets and operations of the
other and, thus, any alleged assets of Tavern are property of the estate.

B.    Even if Tavern were not the alter-ego of Debtor, Debtor and Tavern
      should be substantively consolidated.

Substantive consolidation is the merger of two or more apparent entities into a
single estate. *Simon v. New Center Hospital (In re New Center Hospital)*, 179 B.R. 848,
853 (Bankr. E.D. Mich. 1994). Substantive consolidation allows the assets and
liabilities of two or more entities to be joined into a common fund of assets and creates
a single body of creditors. *Id.* The purpose of the substantive consolidation is the
equitable distribution of a debtor's property among all of its creditors. *Id.* A
presumption against substantive consolidation exists because there is a potentially
detrimental effect on the innocent creditors of the consolidated entity. *Drabkin v.
Midland-Ross Corp. (In re Auto-Train Corp.),* 810 F.2d 270 (D.C. Cir. 1987). There is,
however, a "modern" or "liberal" trend toward allowing substantive consolidation, due to
the increased use of interrelated corporate structures for tax and other business

14

purposes. *Eastgroup Properties v. Southern Motel Assoc., Ltd.*, 935 F.2d 245, 248-9 (11th Cir. 1991).

The Bankruptcy Court has the jurisdiction to order a substantive consolidation pursuant to its equitable powers granted in § 105(a) of the Bankruptcy Code, which states, in part, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *Id.* Although this section does not specifically authorize the consolidation of the assets of a non-debtor with the estate of a debtor, courts have recognized this as a valid application of § 105(a). *Id. Munford, Inc., d/b/a Majik Market v. Toc Retail, Inc. (In re Munford, Inc.)*, 115 B.R. 390 (Bankr. N.D. Ga. 1990); *See also, Sampsell v. Imperial Paper Corp.,* 313 U.S. 215, *reh'g denied*, 313 U.S. 600 (1941)(bankruptcy court had the authority to order to consolidation of the bankruptcy estate with the estate of a non-debtor).

The Sixth Circuit has not ruled on a standard for the allowance of substantive consolidation. In *In re Baker & Getty Financial Services* case, the Sixth Circuit addressed the issue of substantive consolidation in *dicta*, stating:

> Substantive consolidation is employed in cases where the interrelationships of the debtors are hopelessly obscured and the time and expense necessary to attempt to unscramble them is so substantial as to threaten the realization of any net assets for all of the creditors. In any consolidated case, there is implicit in the Court's decision to consolidate the conclusion that the practical necessity of consolidation to protect the possible realization of any recovery for the majority of the unsecured creditors far outweighs the prospective harm to any particular creditor. Thus, when a case is substantively consolidated, the Order for consolidation is, in effect, a determination by the Court that consolidation is warranted by the circumstances of the cases and that it is in the best interest of unsecured creditors to join the assets and liabilities of two debtors. It is, in effect, a statement by the Court that the assets and liabilities of one debtor are substantially the same assets and liabilities of

15

the second debtor . . .

*First National Bank of Barnesville v. Rafoth (In re Baker & Getty Financial Services, Inc.)*, 974, F.2d 712, 720 (1992) *citing In re Evans Temple Church of God in Christ & Community Ctr., Inc.*, 55 B.R. 976, 981-2 (Bankr. N.D. Ohio 1986). Accordingly, this Court finds that the Sixth Circuit approves of substantive consolidation when warranted but does not set forth a specific test for determining when substantive consolidation should be applied.

Even though the Sixth Circuit has not set forth a specific test for determining when substantive consolidation should be applied, the D.C. Circuit and the Second Circuit have set forth specific tests in *In re Auto-Train Corp., Inc.*, 810 F.2d 270, 276 (D.C. Cir. 1987) and *In re Augie/Restivo Banking Co, Ltd.*, 860 F.2d 515, 518 (2d Cir. 1988), respectively.

    1.    Under the Test Set Forth in *Auto-Train*, Debtor and Tavern Should Be Substantively Consolidated.

The Court of Appeals in the D.C. Circuit set forth a test for determining whether substantive consolidation is appropriate in *In re Auto-Train Corp., Inc.*, 810 F.2d 270, 276 (D.C. Cir. 1987) which requires the moving party to show:

    1.    a substantial identity between the entities to be consolidated, and

    2.    that consolidation is necessary to avoid some harm or to realize some benefit, and

    3.    that, *if a creditor objects and demonstrates that it relied upon the separate credit of one of the entities and that it will be prejudiced by the consolidation*, benefits of consolidation "heavily" outweigh the harm.

16

Under the *Auto-Train* test, a presumption in favor of substantive consolidation arises

once the first two prongs of the test are met. In other words, the prima facie case is

established upon: (1) a showing of "substantial identity" (which may or may not reach

the level of an alter-ego determination); and (2) substantive consolidation is necessary

to avoid a harm or produce a benefit for the estate. *In re Standard Brands Paint Co.*,

154 B.R. 563, 569 (Bankr. C.D. Cal. 1993). Once these elements are satisfied, "a

presumption arises 'that creditors have not relied solely on the credit of one of the

entities involved.'" *Eastgroup Properties,* 935 F.2d at 249.

This Court finds that the first element of the *Auto-Train* test is met because there

has been a showing of "substantial identity" between Debtor and Tavern. In fact, not

only has there been a showing of "substantial identity" but this Court has found that the

Tavern and Debtor are actually alter-egos.[1]

---

[1]Both the Trustee and Tavern appear to believe that, regardless of which test is
used, the first step in applying those tests is to make a determination of whether the
businesses in question are alter-egos of one another. Apparently, this belief comes
from the alter-ego analysis found in the bankruptcy case *Simon v. New Center Hospital
(In re New Center Hospital)*, 179 B.R. 848, 854 (Bankr. E.D. Mich. 1995) and from the
following statement found in the district opinion resulting from the appeal of that same
case:

> Following its determination that the facts supported non-debtor Appellants
> and Debtor as alter egos, the Bankruptcy Court applied the seven-part
> inquiry of Augie/Restivo to determine whether the affairs of the non-debtor
> Appellants and the Debtor were sufficiently entangled to warrant
> substantive consolidation.

*Simon v. New Center Hospital (In re New Center Hospital)*, 187 B.R. 560, 568 (E.D.
Mich. 1995). This Court finds that the phrase quoted above merely provides transition
between the discussions set forth in the opinion and does not set forth an alter-ego
analysis as a precursor to applying the tests for employing substantive consolidation
found in the *Auto-Train* and *Augie/Restivo* cases. The tests for determining whether to

17

The second element of the *Auto-Train* test is met because substantive consolidation is necessary to avoid a harm or produce a benefit for the estate. In this case, Debtor has been paying Tavern's expenses but has not been receiving adequate rent or the other entitlements under its Lease with Tavern. Debtor will suffer a harm if Tavern is not substantively consolidated because, without substantive consolidation, Tavern will continue to operate without any expenses and will continue to enjoy its income and assets safe from the claims of Debtor's creditors. In other words, this Court finds that if Debtor pays Tavern's expenses, Debtor's creditors are entitled to the income generated by Tavern.

Additionally, there is substantial benefit to the estate by substantively consolidating Debtor and Tavern. Debtor is entitled to the assets and income of Tavern in light of the fact that Tavern acquired assets from Debtor without consideration, Tavern is operating without making any rent payments, and Debtor has been paying for Tavern's expenses.

Furthermore, there is no harm to any creditor of Tavern by the substantive consolidation. The primary creditor of Tavern is Bank and Bank supports substantive consolidation. Tavern itself could not identify any of its other creditors, except Farrell Moore who is an insider. Apparently, Tavern's trade "creditors" are paid COD and, therefore, are not actually creditors.

Because the first two prongs of the *Auto-Train* test have been met, there is a

---

employ substantive consolidation under the *Auto-Train* and *Augie/Restivo* are, in part, based on whether the entities share a "substantial identity", which may or may not rise to the level of an alter-ego.

18

presumption that creditors have not relied on the separate credit of each of the entities involved. Thus, the *Auto-Train* test has been met with respect to Debtor and Tavern.

Tavern argues that the *Auto-Train* test does not apply because neither element of the test has been met. First, Tavern argues that Debtor and Tavern do not share a substantial identity. This Court disagrees, noting that Tavern has produced no evidence to refute the documents and deposition testimony establishing that Tavern and Debtor share a substantial identity. Second, Tavern argues that the *Auto-Train* test does not apply because consolidation would cause a harm, that being to Tavern's creditors and owner. Again, this Court disagrees. Tavern has failed to identify any specific creditor whose interest will not be served by consolidation. In fact, none of Tavern's creditors, other than the Moores who are insiders, have objected to substantive consolidation. Therefore, this Court finds that substantive consolidation of Debtor and Tavern is warranted under the *Auto-Train* test.

2.  Under the Test Set Forth in *Augie/Restivo*, Debtor and Tavern Should Be Substantively Consolidated.

The tests set forth by the Second Circuit in *In re Augie/Restivo Banking Co, Ltd.*, 860 F.2d 515, 518 (2d Cir 1988) allows the Court to substantively consolidate a non-debtor with the bankruptcy estate if one of two tests have been met:

1.  the creditors dealt with the entities as a single economic unit and 'did not rely on their separate identity in extending credit'; or

2.  the affairs of the debtors are so entangled that consolidation will benefit all creditors.

In this case, substantive consolidation is appropriate under the second test

19

because "the affairs of the debtors are so entangled that consolidation will benefit all creditors." The *Augie/Restivo* case sets forth seven factors that examine the inter-relationship of the entities. *Augie/Restivo,* 860 F.2d at 518. Those factors are:

1. Presence or absence of consolidated business or financial records;

2. The unity of interest and ownership between the entities;

3. The commingling of assets and business functions;

4. The existence of transfers of assets without observance of corporate or other legal formalities;

5. The existence of parent or inter-corporate guarantees or loans;

6. The degree of difficulty in segregating and ascertaining separate assets and liabilities; and

7. The profitability of consolidation at a single location.

*In re New Center Hospital,* 179 B.R. at 856.

In this case, the Court finds that all seven factors weigh in favor of substantive consolidation. First, Debtor and Tavern have consolidated business records. There were no separate financial records for Tavern and Golf Course prior to the Chapter 11 filing. Second, Debtor and Tavern have a unity of interest and ownership. The fact that Tavern leases its space for fifty-cents per square foot from Debtor, well under market value, shows a unity of interest between the entities. The fact that Farrell Moore has an interest in both entities and is the father of all other owners shows a unity of ownership. Third, Debtor and Tavern have commingled assets and business functions as evidenced by Debtor's and Tavern's shared a bank account and joint loan agreement with Bank. Fourth, Debtor and Tavern did not observe corporate formalities. See discussion, section IV.(A), *supra.* Fifth, there were many inter-corporate transfers or

20

loans. The corporate records of both Tavern and Golf Course are replete with transfers between them (or payments on behalf of one another) with no appropriate documentation or observance of any corporate or other legal formalities and no connection to the actual costs of operating each business. Additionally, there was at least one inter-corporate guarantee, that being Tavern's guaranty of Bank's loan to Debtor.[2] Sixth, the books and records of Tavern and Debtor were in such disarray as to make it very difficult to segregate assets and liabilities of Tavern and Debtor. In fact, both Tavern and Debtor shared the same bank account for over a year. Seventh, Tavern and Debtor are only profitable if they exist at a single location. Debtor needs a restaurant and liquor license to attract golfers while Tavern needs a golf course to provide customers for its restaurant and to provide a setting to attract weddings and special events.

For all of the reasons set forth above, this Court finds that the substantive consolidation of Debtor and Tavern is warranted under the *Augie/Restivo* test.

---

[2]Tavern has argued that the Oakland County Circuit Court's finding that Tavern had guaranteed the loan made to Debtor by Bank supports Tavern's contention that Tavern and Debtor are separate entities. This Court rejects this argument because the question of whether Tavern was an alter-ego of Debtor was neither raised nor litigated in the state court proceedings on the guaranty and, therefore, cannot have a collateral estoppel effect in these proceedings.

21

V.

CONCLUSION

For the above-stated reasons, this Court GRANTS Trustee's Motion for

Summary Judgment and orders the substantive consolidation of Debtor and Tavern.

Dated: **AUG 3 0 2005**
_____
Detroit, Michigan

_____
Marci B. McIvor
United States Bankruptcy Judge

cc:   Leslie Stein
      Steven F. Alexsy
      Seyburn, Kahn, Ginn, Bess and Serlin, PC
      2000 Town Center, Suite 1500
      Southfield, MI 48075-1195

      Harvey Babcock
      Harvey Babcock & Associates
      30500 Northwestern Highway, Suite 500
      Farmington Hills, MI 48334

      Stephen P. Stella
      Simon, Korachis, Stella & Zingas, PC
      422 W. Congress, Suite 350
      Detroit, MI 48226

22